IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CHARLES HAMPTON, | ) | |
| | ) | 4:10CV00013 |
| Plaintiff | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| J.W. SQUIRE COMPANY, INC. | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant | ) | |

Before me is Defendant J.W. Squire Company's Motion for Summary Judgment. Def.'s Mot. for Summ. J., Aug. 20, 2010, ECF No. 22. The Plaintiff, Charles Hampton, filed a response on September 17th, 2010 and a hearing was held two weeks later on October 1st. Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., Sept. 17, 2010, ECF No. 30. For the reasons set forth below, I will **GRANT** J.W. Squire's Motion for Summary Judgment.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

On May 27th, 2010, Charles Hampton filed an Amended Complaint against J.W. Squire Company, Inc. in which he alleged racial discrimination at his workplace. Am. Compl., May 27, 2010, ECF No. 16. The genesis of the complaint was an incident on July 28th, 2008 where a laborer foreman, Jerry Manning, called Hampton his "house nigger" at a Chatham Hall worksite in front of two other employees. Id. at 3; Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 23, Aug. 20, 2010, ECF No. 23. Manning was Hampton's supervisor and was the Vice President of J.W. Squire Company. Am. Compl. 3; Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. Ex. A 1, Sept. 17, 2010, ECF No. 30-1. When asked at his deposition how many times Manning used this racial epithet, Hampton

1

responded, "about three times." Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 27. In a statement given to the Equal Employment Opportunity Comission, Manning claims that he was not calling Hampton names, rather Manning was simply recounting an incident that occurred between Hampton and another employee at a past time. Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. Ex. B, Sept. 17, 2010, ECF No. 30-2. After the incident, Hampton continued working for the remainder of the day. Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 28. Although in his deposition Hampton said that he never became too sick or aggrieved to continue working, in both the amended complaint and the response to the summary judgment motion Hampton states that he suffered embarrassment, humiliation, and pain. Am. Compl. 5; Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 28; Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 2, Sept. 17, 2010, ECF No. 30. Hampton continued working at J.W. Squire until March 13th, 2009, when he was notified that he was being terminated for lack of sufficient work. Am. Compl. 3; Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 32. Both at his deposition and in his response to the Motion for Summary Judgment, Hampton explained that he continued working because "I had to. I had family." Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 28; Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 2.

Hampton filed one charge of discrimination with the EEOC on February 20th, 2009. Compl. Ex. A 2, Apr. 5, 2010, ECF No. 3; Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 29-30; Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. Ex. D 3, Sept. 17, 2010, ECF No. 30-4. That charge of discrimination was based on the racist remarks allegedly made by Manning in July 2008. Compl. Ex. A 1-2; Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 19-20; Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. Ex. C 2-3, Sept. 17,

2010, ECF No. 30-3 (EEOC Intake Questionnaire completed by Hampton). Although it is quite possible that the filing of the EEOC charge played at least some part in Hampton's termination about one month after the fact, as discussed *infra* Hampton would have had to file a second EEOC complaint regarding his termination in order to invoke this Court's jurisdiction. Hampton failed to do this and is now time barred from doing so. At his July 2010 deposition, Hampton indicated that at the time he was laid off work had slowed down and that he did not believe that he was given a false reason for his termination. Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 32. See also Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. Ex. E, Sept. 17, 2010, ECF No. 30-5 (Virginia Employment Commission printout listing "lack of work" as the reason for Hampton's termination). Although Hampton does not directly say so, his response to the summary judgment motion suggests that he believes he was fired because of the EEOC charge. See Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 3.

## APPLICABLE LAW

J.W. Squire has moved for summary judgment. A movant is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). The court "construe[s] the evidence in the light most favorable to [Hampton], the party opposing [J.W. Squire's] summary judgment motion, and draw[s] all reasonable inferences in [his] favor." George & Co. LLC, 575 F.3d at 392.

Hampton has alleged employment discrimination, of which there four types: disparate treatment, disparate impact, hostile work environment, and unlawful retaliation. Although Hampton's pleadings are not clear as to which form of employment discrimination he is alleging, Hampton's EEOC complaint pertains only to a hostile work environment claim. Compl. Ex. A 2, Apr. 5, 2010, ECF No. 3. To defeat a summary judgment motion in a hostile work environment case, a plaintiff must show that "the evidence—viewed in [his] favor—would allow a reasonable [finder of fact] to conclude that the harassment was (1) unwelcome, (2) based on [his]…race, (3) sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive atmosphere, and (4) imputable to [the employer]." E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 174-75 (4th Cir. 2009).

## **ANALYSIS**

I. The Court Lacks Jurisdiction Over Hampton's Retaliation Claim

Since "[Hampton's] complaint was filed pro se…we are…obligated to construe it liberally to assert any and all legal claims that its factual allegations can fairly be thought to support." Martin v. Gentile, 849 F.2d 863, 868 (4th Cir. 1988) (internal citing references omitted). It is uncontroverted that Hampton is making a hostile work environment claim. Br. in Supp. of Def.'s Mot. for Summ. J. 4, Aug. 20, 2010, ECF No. 23. In addition, even though Hampton has "made no specific reference to [unlawful retaliation] in his complaint…[t]here can be no doubt that the facts as pled to by [Hampton]—[being fired two days after the Vice President of J.W. Squire, Jerry Manning, responded to Hampton's EEOC complaint]—are sufficient to make out a cognizable [unlawful retaliation] claim." Martin, 849 F.2d at 867-68. See also

4

Reiterman v. Costco Wholesale Management No. 238, No. 5:05-CV-12, 2005 WL 1800085, at *2 (W.D.Va. July 28, 2005) (the plaintiff stated a claim of retaliation where the plaintiff was fired several weeks after filing a discrimination questionnaire with the EEOC). This Court, however, has no jurisdiction to hear Hampton's unlawful retaliation claim because Hampton has failed to exhaust his administrative remedies.

It is undisputed that Hampton has filed only one EEOC complaint. Whereas Hampton was fired on March 13th, 2009, Hampton's EEOC complaint was filed on February 20th, 2009 and covered only Manning's alleged use of racial slurs in July 2008. Compl. Ex. A 2; Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 29-30; Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. Ex. D 3, Sept. 17, 2010, ECF No. 30-4. Delivering the opinion of the Court in Lewis v. City of Chicago five months ago, Justice Scalia observed that "[b]efore beginning a Title VII suit, a plaintiff must first file a timely EEOC charge." Lewis v. City of Chicago, 130 S.Ct. 2191, 2196-97 (2010). Hampton's time to file the EEOC complaint as to any retaliation claim stemming from his discharge has long passed—that deadline would have been January 7th, 2010. Clark v. Beasley, No. 3:03-CV-1074, 2004 WL 3222732, at *2 (E.D.Va. July 8, 2004) (Title VII claims must be filed with the EEOC or a state deferral agency no later than 300 days after the alleged incident). Just last year the Fourth Circuit held that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Therefore, any retaliation claim Hampton may have made cannot be considered because this Court simply lacks jurisdiction.

II. J.W. Squire Is Entitled to Summary Judgment on the Hostile Work Environment Claim

The racially offensive comments allegedly made by Manning in July 2008 certainly constitute unwelcome harassment based on race and imputable to the employer. Central Wholesalers, Inc., 573 F.3d at 174-75. The issue for summary judgment is whether there is a genuine issue of material fact as to whether the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. Id. It is on this ground that Hampton's hostile work environment claim fails because, even taking the pleadings and discovery on file in the light most favorable to him, Hampton is still unable to prove an essential element of his case. Fed. R. Civ. P. 56 (c) (for the standard of review); George & Co. LLC, 575 F.3d at 392 (same); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996) (for the way in which J.W. Squire may show that it is entitled to summary judgment). In his complaint, Hampton accuses Manning of using a racial slur against him "more than once." Am. Compl. 3. During Hampton's deposition, counsel for J.W. Squire asked Hampton how many times Manning used the slur, to which Hampton responded "[a]bout three times, I would say." Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B 27. In his pleadings, at his deposition, and at the October 1st hearing, Hampton has consistently alleged that the slurs were all used during the course of one incident/conversation that took place in July 2008 at a job site.

For the purposes of meeting the abusive atmosphere element of a hostile work environment claim, both the Fourth Circuit and the District Courts in this circuit have long "separate[d] general use of epithets from the single use of a slur." Brown v.

Director SCDC, No. 8:08-CV-3761, 2010 WL 3167331, at *5 (D.S.C. Aug. 5, 2010).

See also Jordan v. Alternative Resources Corp., 458 F.3d 332, 339-40 (4th Cir. 2006). Of course, no court in the country has come up with a bright line rule on the number of times a supervisor or employer can use a racial slur while addressing an employee without creating a hostile work environment for Title VII purposes. See, e.g., Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) ("it is repeated incidents of verbal harassment that continue despite the employee's objections that are indicative of a hostile work environment and not simply some magic number of racial or ethnic insults"). The Second Circuit has succinctly summed up the test:

> For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment.

Schwapp v. Town of Avon, 118 F.3d 106, 110-11 (2d Cir. 1997) (internal citing references and quotation marks omitted). See also Miller, 277 F.3d at 1276 (announcing a similar test where the court considers the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or "a mere offensive utterance," and whether the conduct unreasonably interferes with the plaintiff's job performance).

The case law does make it quite clear, however, that three uses of a racial slur in the course of one conversation is not sufficient to meet the abusive atmosphere element. Compare Skipper v. Giant Food Inc., 68 Fed.Appx. 393, at *4 (4th Cir. 2003) (plaintiff failed to establish a hostile work environment claim where he alleged that on one

7

occasion his manager followed him around his place of employment and referred to him by a racial slur) and Belton v. City of Charlotte, 175 Fed.Appx. 641, at *13 (4th Cir. 2006) (plaintiff's hostile work environment claim would not survive summary judgment where basis of the claim was one fourteen year old incident where the plaintiff's boss used a racial slur against the plaintiff and then told the plaintiff to "go and cook me some grits") and Barrow v. Georgia Pacific Corp., 144 Fed.Appx. 54, 57 (11th Cir. 2005) (District Court properly granted summary judgment to defendants on a hostile work environment claim where plaintiffs put on evidence of displays of the confederate flag, the letters "KKK" on a bathroom wall, and being called a racial epithet about three times per year; plaintiffs failed to establish that harassment was sufficiently severe or pervasive to alter the working conditions) with White v. BFI Waste Services, LLC, 375 F.3d 288, 297 (4th Cir. 2004) (reversing the District Court's granting of summary judgment for the defendant where plaintiffs alleged that throughout their employment they were subject to a variety of racial slurs from their supervisors and the use of these slurs was not limited to a few occasions) and Spriggs v. Diamond Auto Glass, 242 F.3d 179, (4th Cir. 2001) (genuine issue of material fact existed where plaintiff alleged that his immediate supervisor habitually used a variety of racial epithets towards him and on one occasion left a picture of a monkey in his employee's manual with the message "so you'll never forget who you are"). In order to demonstrate that an abusive atmosphere existed, the use of racial slurs must be "so commonplace, overt and denigrating that they created an atmosphere charged with racial hostility." Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995) (internal citing references and quotation marks omitted). Based on the case law discussed above, Hampton simply cannot show that the

race-based indignities he suffered on one occasion "altered the condition of the workplace, creating an objectively abusive and hostile atmosphere." Id.

## **CONCLUSION**

Because Hampton has failed to prove an essential element of his claim, J.W. Squire Company's Motion for Summary Judgment is **GRANTED**.

Entered this 5th day of October, 2010.

s/Jackson L. Kiser<br>
Senior United States District Judge